UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL BABCOCK,

        Plaintiff,

v.

STATE OF MICHIGAN and
MICHIGAN STRATEGIC FUND,

        Defendant.

CIVIL CASE NO. 12-cv-13010
HON. MARIANNE O. BATTANI

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS**

      This matter is before the Court on Defendants', the State of Michigan ("the State" or "Michigan") and Michigan Strategic Fund ("MSF"), motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 14). The Court heard oral argument on March 12, 2014, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the motion is GRANTED.

**I.  INTRODUCTION**

      Plaintiff, Jill Babcock, filed the instant action on July 10, 2012, alleging violations of Titles II and III of the Americans with Disabilities Act ("the ADA") as well as violations of the Rehabilitation Act of 1973 ("the Act"). Defendants moved to dismiss on several grounds: (1) Plaintiff is barred from suing the State by Eleventh Amendment sovereign immunity; (2) Plaintiff lacks standing; (3) Plaintiff fails to plead facts sufficient to support her claims. After Defendants filed their motion, Plaintiff voluntarily withdrew her Title III claim. Her action under Title II and the Rehabilitation Act remain at issue.

Plaintiff works for the Michigan Economic Development Corporation ("MEDC"), with her office in Cadillac Place, a building located in Detroit, Michigan.  Defendant MSF, a State agency, owns Cadillac Place.  The State leases and operates the building, which houses government offices as well as a workers' compensation court and the Michigan Court of Appeals for District I.

In 2002, Cadillac Place underwent major renovations, which, Plaintiff alleges, did not include updates necessary to bring the building in line with architectural requirements under the Americans with Disabilities Act ("ADA").  She argues that these omissions denied her equal access to the building and violated her statutory rights because she suffers from Friedreich's Ataxia, a genetic degenerative neuro-muscular disorder, impairing her ability to walk.  Plaintiff has not asserted any affiliation with, or business in, either court.

## II.     STANDARD OF REVIEW

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint "fails to give the defendant fair notice of what the. . . claim is and the ground upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  A court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the complaint contains well-pleaded factual allegations, the court must assume their veracity; but it need not assume the truth of bare legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

III.   ANALYSIS

   A.   Title II of the Americans with Disabilities Act

The parties disagree as to whether Plaintiff's Title II claim is barred by the Eleventh Amendment. Generally, the Eleventh Amendment protects states and state agencies from private suit in federal court. "This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). However, Congress may abrogate state sovereign immunity by legislating pursuant to its power under Section Five of the Fourteenth Amendment. Alden v. Maine, 527 U.S. 706, 756 (1999) (explaining that because adopting the Fourteenth Amendment "fundamentally altered the balance of state and federal power struck by the Constitution", the Amendment's enforcement provision in Section Five allows the federal government to abrogate Eleventh Amendment immunity when legislating under that section); United States v. Georgia, 546 U.S. 151, 158 (2006).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Neither Defendants' status as "public entities" under the statute is in dispute. However, despite Congress' unequivocal desire to abrogate Eleventh Amendment sovereign immunity with regard to Title II, Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court has determined that it has not successfully done so for all claims falling under the Title. In United States v. Georgia, the Supreme Court held that Title II validly abrogates sovereign immunity for conduct

3

that actually violates the Fourteenth Amendment. Georgia, 546 U.S. at 159. The Court then created a three-part analysis to guide district courts making abrogation determinations on a case-by-case basis. In deciding whether Congress has abrogated immunity for a class of state conduct, courts consider the following factors:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Id. The Sixth Circuit considers this test to be "required" when analyzing whether a State has sovereign immunity in Title II cases. Mingus v. Butler, 591 F.3d 474, 482 (6th Cir. 2010).

Applying the Georgia analysis to the facts at hand, it becomes clear to this Court that Plaintiff's Title II complaint is barred. First, she fails to plead a violation of Title II as she has not identified any "services, programs, or activities" from which Defendants have excluded her. Contrary to Plaintiff's argument, the Cadillac Place building itself does not constitute a program, activity, or service under the statute. Rather, architectural regulations promulgated in conjunction with the ADA create a distinction between programs and their lodgings. See, e.g., 28. C.F.R. § 35. 151 (distinguishing "activity" and "facility") ("A primary function is a major activity for which the facility is intended. Areas that contain a primary function include. . . other work areas in which the activities of the public entity using the facility are carried out"). Alternative methods of complying with ADA architectural requirements include "reassignment of services to accessible buildings. . . home visits, [and] delivery of services at alternate accessible

sites." 28 C.F.R. § 35.150(b)(1). If the structures themselves were considered programs or services, simply moving an activity to another location, as the compliance regulation suggests, could not satisfy the statute. Thus, the regulations draw a line between buildings and the activities taking place within them. Because Plaintiff had not named a program, activity, or service from which she has been excluded, she has not pleaded a valid Title II claim.

Even if Plaintiff had identified a Title II violation, she still would be barred by sovereign immunity. The second Georgia factor considers whether a Title II violation also violates the Fourteenth Amendment. Because the disabled are not a suspect class for equal protection purposes, Plaintiff must identify a due process violation to satisfy this factor. See Popovich v. Cuyahoga Cnty. Court of Common Pleas, 276 F.3d 808, 811 (6th Cir. 2002). Plaintiff lacks standing to make a due process argument as she has not "1) suffered an injury in fact that is, a) concrete and particularized and b) actual or imminent rather than conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action. . . and 3) it is likely. . . that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc., 528 U.S. 167, 189-91 (2000). Plaintiff's due process claim hinges solely on the idea that because her workplace happens to share a building with the courts, her due process rights of access to those courts is violated. Her complaint does not allege that she is involved in either a criminal or civil suit, that her employment depends upon access to the courts, or even that she has been denied a concrete opportunity to engage in the judicial process. It simply notes that Cadillac Place houses both MEDC and two courts. As Plaintiff has not alleged facts sufficient to establish standing for a due process claim,

she cannot identify a Fourteenth Amendment violation to satisfy the second Georgia factor.

Finally, Plaintiff cannot satisfy the final Georgia factor, as the Sixth Circuit has made clear that Congressional intent to abrogate state sovereign immunity under Title II is invalid for equal protection claims. Popovich, 276 F. 3d at 811-12 ("[C]ongressional authority under section 5 to enforce the Equal Protection Clause is limited and will not sustain the Disabilities Act as an exception to the Eleventh Amendment state immunity"). Because Plaintiff's Title II claim is barred by Eleventh Amendment immunity, it must be dismissed.

### B. Section 504 of the Rehabilitation Act

The parties also disagree as to the viability of Plaintiff's Rehabilitation Act claim. The Act's relevant text states that "[n]o otherwise qualified individual with a disability. . . shall. . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Courts analyze Rehabilitation Act claims similarly to ADA claims because the statutes contain nearly identical language, and the two are "quite similar in purpose and scope." McPherson v. Mich High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 459 (6th Cir. 1997). As such, the material defect in Plaintiff's Title II claim is also a material defect in her Rehabilitation Act claim--she fails to identify a "program or activity" from which Defendants have exclude her. Consequently, she has not stated a claim against Defendants under the Rehabilitation Act.

This decision in no way reflects upon Defendants' level of compliance with the architectural requirements triggered when Cadillac Place was renovated, and does not

absolve Defendants of their legal duty to ensure access to the building. Rather, this dismissal signals that Ms. Babcock was simply the wrong plaintiff to bring these claims.

### C. Leave to Amend the Complaint

Plaintiff requests leave to amend her complaint to include individuals acting in their official capacity under the Ex Parte Young doctrine. Ex Parte Young provides "federal jurisdiction over a suit against a state official when that suit seeks only prospective. . . relief in order to end a continuing violation of federal law," and thus Eleventh Amendment protection. Seminole Tribe v. Florida, 517 U.S. 44, 73 (1996) (internal quotation marks removed). Pursuant to the Federal Rules of Civil Procedure, courts should freely grant leave to amend a pleading. Fed. R. Civ. P. 15(a)(2). However, a court may deny a motion to amend if the request is animated by bad faith, Forman v. Davis, 371 U.S. 178, 182 (1962), or if the proposed amendment would be futile. Head v. Jellico Housing Auth., 879 F.2d 1117, 1123 (6th Cir. 1989). Plaintiff's request misapprehends her complaint's fatal flaw; replacing Defendants with other, as of yet unnamed, individuals would not provide an "activity or program" to which Plaintiff has been denied access. Therefore, an amendment would not save her from dismissal for failure to state a claim upon which relief can be granted. Accordingly, her request to amend the complaint is denied.

### IV. CONCLUSION

Accordingly, the court **GRANTS** Defendants' Motion to Dismiss**.**

**IT IS SO ORDERED**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: May 30, 2014

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed to counsel of record on this date by ordinary mail and/or electronic filing.

        s/Bernadette M. Thebolt
        Case Manager