```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                       SOUTHERN DIVISION

 3                         _    _    _

     JILL BABCOCK,
 4
                 Plaintiff,
 5
       vs.                           Case No. 12-13010
 6
     STATE OF MICHIGAN and MICHIGAN     Hon. Marianne O. Battani
 7   STRATEGIC FUND,

 8              Defendants.
     _____/
 9
                         MOTION TO DISMISS
10
             BEFORE THE HONORABLE MARIANNE O. BATTANI
11                  United States District Judge
             Theodore Levin United States Courthouse
12                231 West Lafayette Boulevard
                         Detroit, Michigan
13               Wednesday, March 19, 2014

14
     APPEARANCES:
15
     For the Plaintiff:    ALI W. CHARARA
16                         The Sam Bernstein Law Firm
                           31731 Northwestern Hwy., Ste. 333
17                         Farmington Hills, MI  48334
                           (248) 225-5726
18

19   For the Defendants:   CHRISTINA M. GROSSI
                           Department of Attorney General
20                         525 W. Ottawa St.
                           Lansing, MI  48933
21                         (517) 373-1162

22

23

24
            To obtain a copy of this official transcript, contact:
25            Robert L. Smith, Official Court Reporter
              (313) 964-3303 • rob_smith@mied.uscourts.gov
```

## TABLE OF CONTENTS

Page

Motion............................................. 4

Response...........................................10

Reply..............................................18

Under advisement by the Court......................22

```
 1    Detroit, Michigan

 2    Wednesday, March 19, 2014

 3    at about 3:19 p.m.

 4                         —    —    —

 5              (Court and Counsel present.)

 6              THE CASE MANAGER:  The Court calls Babcock vs.

 7    State of Michigan.

 8              THE COURT:  Good afternoon.  May I have your

 9    appearances, please?

10              MR. CHARARA:  May it please the Court, Ali Charara

11    on behalf of the plaintiff.

12              MS. GROSS:  Good afternoon, Your Honor.  Assistant

13    Attorney General Christina Grossi on behalf of the defendant.

14              THE COURT:  At some point I was told that you were

15    talking about settlement.  Is that --

16              MS. GROSS:  That's correct, Your Honor.

17              THE COURT:  And are you still or no?

18              MS. GROSS:  We are still in the process of doing

19    that, yes.

20              THE COURT:  Okay.  How close are you?

21              MS. GROSS:  We have recently conducted I think just

22    a few weeks ago --

23              MR. CHARARA:  Yes.

24              MS. GROSS:  -- a site visit with the plaintiff's

25    expert witness where they walked Cadillac Place Building, and
```

1    they are supposed to turn their report over to us, and then

2    we will meet to see if we can agree to some of the findings

3    in the report.

4         MR. CHARARA:  That report is complete, Your Honor,

5    and sister counsel and I discussed that I will turn over the

6    electronic files to her after court today.

7         THE COURT:  Okay.  All right.  This is the

8    defendants' motion so you may proceed.

9         MS. GROSS:  Thank you, Your Honor.  This is the

10   defendants', State of Michigan and the Michigan Strategic

11   Fund's, motion to dismiss.  There are basically two grounds

12   that the state is seeking dismissal of the entire complaint

13   in relation to; the first is 11th Amendment immunity and the

14   second would be standing, and I think those two defenses kind

15   of overlap in application in this case.

16        Plaintiffs have brought two claims under the ADA,

17   one being under Title 1 -- excuse me, Title 2 and the second

18   being under Title 3.  It appears that during --

19        THE COURT:  This is Title 3 though, right?

20        MS. GROSS:  It appears during briefing that they

21   have withdrawn Title 3, so we are left with the Title 2 claim

22   and the claim that has been brought under the Rehabilitation

23   Act.

24        As to the Title 2 ADA claim, the state has asserted

25   11th Amendment immunity.  We've provided case law for the

1    Court as to the grounds for our immunity.  I think most

2    relevant in this case is probably the Popovich, the

3    6th Circuit case, which talks about the differences between

4    claims brought under an equal protection basis and those

5    brought under due process.

6         The complaint in this case is a little bit

7    different because the plaintiff's grounds as pled in her

8    complaint for her access to Cadillac Place are based on her

9    employment with an agency that is housed in Cadillac Place.

10   Normally you see employment claims brought under Title 1 but

11   what she's done in this case is said well, I access Cadillac

12   Place because of my employment but I'm bringing it under

13   Title 2 because there are programs and services that Cadillac

14   Place offers.

15        THE COURT:  Now, what programs and services does

16   she partake of?

17        MS. GROSS:  I don't know any, Your Honor.  There

18   are none identified in the complaint.  She essentially says I

19   work for the Michigan Economic Development Corporation and

20   therefore I go to Cadillac Place.

21        THE COURT:  She doesn't allege anything like she

22   can't get into the building or she can't use the restrooms or

23   she can't --

24        MS. GROSS:  She -- I think she generally -- I think

25   it is fair to say she generally identifies building defects

1    that interfere with her equal access to Cadillac Place.  One

2    of the things she points out is parking, one of the things

3    she points out is just some ramps, I think she might mention

4    bathrooms in the complaint, but she doesn't tie those issues

5    to any denial of services, which is part of our standing

6    argument, which is to say under both the Rehabilitation Act

7    and ADA, but certainly I think it is easier to identify in

8    the Rehabilitation Act claim, you still have to point to some

9    program or service that you are being denied access to in

10   order to meet the standing requirement for suffering and

11   injury, otherwise there is just kind of this amorphous well,

12   I go to this building and, you know, there is an

13   architectural defect and therefore you are violating the ADA

14   and the Rehabilitation Act, and it seems to me both of those

15   acts are premised on equal participation in a program or

16   service.

17          In terms of the ADA claim, the standing issue

18   fleshes out a little bit more because when we asserted

19   11th Amendment immunity because you can't bring an equal

20   protection based claim the response was well, there is a

21   courthouse inside Cadillac Place.  Well, there is no

22   allegation in the complaint that she has tried to access a

23   courthouse and she has been denied access to a courthouse,

24   that she is maybe a litigant in a proceeding or something of

25   that nature; it is just well, there is a courthouse there.

1    Well, not only do we think that's not sufficient to

2  pierce 11th Amendment immunity because we don't think that

3  makes the claim sound in due process, but we are also saying

4  you don't have standing for that type of claim because you

5  haven't identified any injury relating to any access to the

6  courthouse.

7    So those two issues in the ADA kind of flesh out,

8  and with the Rehabilitation Act claim it is the same thing,

9  we have said you haven't identified a program or service that

10  you can access -- can't access.  Obviously Cadillac Place

11  houses lots of agencies, both private and public, there are

12  many services that go on there.  No injury has been

13  identified with a particular service which causes concern

14  because the Rehabilitation Act's waiver of 11th Amendment

15  immunity is premised on a receipt of federal funds.  Without

16  the receipt of federal funds there is no basis to pierce the

17  11th Amendment immunity.

18    So our response was well, you have to identify a

19  program or service so we can determine, number one, that the

20  state actually received financial funds -- or financial -- or

21  federal money for that service to make sure we have waived

22  11th Amendment immunity as to whatever you are alleging.

23    THE COURT:  Well, do they allege here that the

24  building is the program kind of thing?

25    MS. GROSS:  Yes, that's essentially the response is

1    the building is the program.  I don't think that that --

2          THE COURT:  The federal funds issue is really

3    secondary to this?

4          MS. GROSS:  Yes, and they haven't -- essentially,

5    yes, I suppose if you are going to argue that the building is

6    the program then you would have to argue that we received

7    money to buy the building but, yeah, they are essentially

8    saying well, the building is the program.  Well, our position

9    is it is not a program, there are programs inside of the

10   building, and I think the plain language supports that, and I

11   think that you also find that there is case law that talks

12   about the ability to provide access to a program by making

13   accommodations.  I know there's some case law, I'm not sure

14   if it is referenced in the briefs, but there's some case law

15   that talks about moving programs to other buildings to have

16   access.

17          So I think to say just because the State of

18   Michigan owns a building then, you know, anything that goes

19   on must be compliant with the Rehabilitation Act, I mean,

20   certainly if the State of Michigan owned a building where

21   only employees were allowed I would argue, you know, there is

22   no basis for either Title 2 or the Rehabilitation Act because

23   there is no public access to that building.  Maybe somebody

24   could bring a Title 1 claim and say based on my employment

25   I'm being denied equal opportunity and employment, but to say

1    well, just because the State of Michigan owns a building it

2    has to comply with both of these acts, so those are the two

3    bases.

4           I will say in response to the motion to amend

5    essentially plaintiffs have said well, allow us to cure these

6    defects if there are defects with the motion to amend.

7           THE COURT:  They want to name individuals?

8           MS. GROSS:  They want to name individuals, yes.

9    While that may cure an 11th Amendment challenge because

10   Ex parte Young, our position is most of these issues are

11   based on standing because the complaint is written so

12   broadly, and an Ex parte Young action won't cure an Article 3

13   standing problem.  We have to have some injury that has been

14   identified so the defendants can properly defend, and that's

15   just not going to be cured by naming an individual defendant.

16          THE COURT:  Title 2 is applied only against the

17   state, right?

18          MS. GROSS:  Title 2 would only be applied against

19   the state.

20          THE COURT:  So adding an individual what would that

21   do for you?

22          MS. GROSS:  I assume if they wanted to add an

23   individual to try to say I'm bringing an Ex parte Young

24   action against that individual in their official capacity,

25   our position though is to bring a proper Ex parte Young

1    action that individual has to have some connection with the

2    alleged claim, and I don't know how you would get there in

3    this case.

4              THE COURT:  Okay.  All right.

5              MS. GROSS:  Thank you, Your Honor.

6              THE COURT:  Let's hear the response.

7              MR. CHARARA:  Good afternoon, Your Honor.

8              THE COURT:  Good afternoon.

9              MR. CHARARA:  I'm going to start with the 11th

10   Amendment immunity.  Defense counsel and us both agree that

11   under both the ADA and the Rehabilitation Act it is no

12   question that Congress has expressly abrogated 11th Amendment

13   immunity, so to talk about Popovich vs. Cuyahoga, yes, in

14   that case the court was dealing with a Title 2 claim brought

15   under the ADA, and in that case the court did note that the

16   plaintiff there had a claim that was both a violation of the

17   ADA and a violation of due process and so the court did that

18   proper analysis and concluded that, yes, for purposes of that

19   claim an 11th Amendment state immunity was validly abrogated

20   by Congress.  However, the court never indicated --

21             THE COURT:  Because due process was within the ADA

22   violation in that case?

23             MR. CHARARA:  Yes, Your Honor, but the court never

24   indicated that a due-process claim was necessary.  In fact, a

25   subsequent case by the United States Supreme Court, U.S. vs.

1    Georgia, found again that a Title 2 claim couched both

2    14th Amendment and ADA violations within it, but the court

3    did specifically state that where a claim alleges violations

4    of the ADA but not violations of the 14th Amendment, it is

5    within the discretion of the court to determine whether or

6    not the claim may proceed.  In other words, just because an

7    ADA violation is not also a violation of the 14th Amendment,

8    due process or equal protection does not stop the plaintiff

9    from moving forward.

10            THE COURT:  Well, that's what -- the 6th Circuit

11    talks about that, though, right?

12            MR. CHARARA:  Correct, yes, and as does the United

13    States Supreme Court in the subsequent case.

14            Now, as for a due-process --

15            THE COURT:  How do you distinguish that Popovich

16    court test?

17            MR. CHARARA:  Well, Your Honor, the Popovich court

18    did create a test to say a due-process claim had to be

19    present.  In that case they were dealing with a due-process

20    claim and held that because there was a due-process claim the

21    claimant could move forward but did not address the issue of

22    what would happen if there was not a due-process claim, which

23    is why I speak about the subsequent U.S. vs. Georgia case

24    where the Supreme Court held that where there is a

25    due-process claim as well as an ADA violation claim, of

 1    course the claimant can move forward, but specifically quoted

 2    and said that even if there is not the 14th Amendment claim

 3    and there is only an ADA claim it is still within the

 4    discretion of the trial court to determine whether the

 5    plaintiff can move forward with the claim.

 6         THE COURT:  But didn't it say that equal protection

 7    wasn't enough, that there had to be the due-process element

 8    to abrogate the --

 9         MR. CHARARA:  No, Your Honor, not in United States

10    vs. Georgia.  In United States vs. Georgia the Supreme Court

11    stated that an ADA --

12         THE COURT:  No, in Popovich.

13         MR. CHARARA:  I'm sorry.

14         THE COURT:  That's the 6th Circuit case.

15         MR. CHARARA:  Yes.  In Popovich, like I said, Your

16    Honor, the Court held that in that case that the claimant did

17    have a due protection -- a due-process claim and allowed the

18    claim to move forward, but they weren't faced with an issue

19    where the claimant did not have a due-process claim, that

20    analysis was undergone in the U.S. vs. Georgia case that came

21    after, and that's where the Supreme Court first touched on

22    when a claimant is bringing a claim and has only an ADA

23    violation but not a due-process violation, and the court said

24    in those situations it is still within the discretion of the

25    trial court to allow the claim to move forward, i.e., just

1    because there is no due-process claim doesn't mean the claim

2    cannot move forward and does not mean that 11th Amendment

3    abrogation by Congress is invalid.

4         Now, Your Honor, as far as the due-process

5    violation is concerned, we have alleged in the complaint

6    here, specifically in the complaint before any of this arose,

7    that there are two courts within the Cadillac Place building,

8    a workers' compensation --

9         THE COURT:  But your client has no connection with

10   the courts, she didn't say she had a case she couldn't get

11   to?

12        MR. CHARARA:  Your Honor, our client is a

13   practicing attorney.  That she didn't have any current

14   business in the workers' compensation court or the Court of

15   Appeals pending at the time of lawsuit was brought doesn't

16   change the fact that she is an attorney and a member of the

17   public who undoubtedly at some point in the future may have

18   to use the workers' compensation court or the Court of

19   Appeals especially as a practicing attorney.

20        THE COURT:  What is the injury in fact here?

21        MR. CHARARA:  The injury in fact is that she can't

22   gain access to the building and that includes everything

23   within the building.

24        THE COURT:  She certainly gains access to get to

25   work, right?

```
 1          MR. CHARARA:  It is physically possible for her to
 2   enter the building, but the ADA doesn't state that just
 3   because it is physically possible to enter the building that
 4   the ADA is compliant.  The ADA states that access has to be
 5   equal, and in these circumstance access is certainly not
 6   equal because plaintiff endures great difficulty to gain
 7   access to the building from the entrance ramps, from the
 8   parking structure and even day-to-day activities like
 9   attending the restrooms inside of the building.
10          THE COURT:  I don't see that in her complaint, I
11   don't.
12          MR. CHARARA:  I'm sorry, Your Honor, if it was
13   stated --
14          THE COURT:  It sounds like she is complaining for
15   somebody else but not herself.
16          MR. CHARARA:  I'm sorry, Your Honor.  If it was
17   stated in more general terms in the complaint I can assure
18   you the plaintiff herself struggles with these everyday
19   activities to gain access to parking, from parking to the
20   building, and then through the ramp into the building while
21   she is in the building to access certain facilities such as
22   the restroom.  These are all also documented in our expert's
23   report, which he has turned over to me today, which --
24          THE COURT:  But it is not in the complaint and I
25   didn't know about, you didn't say she was an attorney, you
```

Motion to Dismiss - March 19, 2014

 1  didn't say she practiced in that court, so she does appellate

 2  work also?

 3          MR. CHARARA:  No, Your Honor, not at this time, but

 4  she is a licensed attorney.  And as far as the complaint

 5  goes --

 6          THE COURT:  Every licensed attorney who has a

 7  disability would not have a claim against that building?

 8          MR. CHARARA:  Your Honor --

 9          THE COURT:  You would have to practice there, you

10  have to have an injury in fact?

11          MR. CHARARA:  Yes, Your Honor, but we don't -- to

12  start we don't need to narrow this case down to only access

13  to the courts because the complaint doesn't only -- the

14  complaint alleges unequal access to the building in general,

15  her place of employment, the courts within the building,

16  anything within the building.  It doesn't change the fact

17  that the building is owned and operated by these two

18  defendants.

19          THE COURT:  No, of course that doesn't change the

20  fact, that's really not an issue.

21          MR. CHARARA:  Yes, Your Honor.  And the only reason

22  the issue of the two courts in the building has been

23  litigated so intensely for purpose of this motion is to get

24  around 11th Amendment immunity because some courts have

25  determined that if you have a due-process claim that you can

1   bypass 11th Amendment, but that is why when we stated that if

2   that the Court holds that we need a due-process claim and

3   further holds that we have not alleged a proper due-process

4   claim then to name individual actors instead of the state

5   would eliminate any 11th Amendment issue, and the reason is

6   6th Circuit precedence clearly holds that if you are bringing

7   a suit against individual state actors, not the state itself,

8   and the suit is seeking declaratory or injunctive relief, not

9   money damages like our suit is, then the 11th Amendment does

10  not apply whatsoever.  If the 11th Amendment does not apply

11  to this case then there is no need to bring a due-process

12  claim and the only claim that needs to be --

13          THE COURT:  But doesn't Title 2, doesn't that only

14  go against the state, that's one question?  And then the

15  other one says no qualified disabled person shall be excluded

16  from participation in or denied the benefits of services,

17  programs or activities.  I would like that identified a

18  little better.

19          MR. CHARARA:  Okay.  To answer your first question,

20  Your Honor, yes, Title 2 applies to the state but not only

21  the state, Title 2 applies to any public entity so that's

22  any -- the state, any sub government underneath the state,

23  any agency, any instrumentality of the state, they are all

24  subject to Title 2.

25          Second of all --

1          THE COURT:  But not individually?

2          MR. CHARARA:  Your Honor, yes, an individual in

3   their official capacity is also subject to Title 2.

4          THE COURT:  It is?

5          MR. CHARARA:  Yes, Your Honor.  Title 2 applies to

6   all government entities.  If you are in your official

7   capacity working for a governmental entity then you are

8   subject to Title 2.

9          THE COURT:  What about Ex parte Young?

10         MR. CHARARA:  What about it, Your Honor?

11         THE COURT:  How does that apply to the individuals?

12         MR. CHARARA:  As far as amending our complaint to

13  name individuals?

14         THE COURT:  Uh-huh, yes.

15         MR. CHARARA:  It is our position that if we amend

16  our complaint to name individuals instead of the state then

17  the 11th Amendment no longer has any applicability, it is out

18  of the picture, and this becomes an ordinary ADA claim as if

19  it were against any non-state defendant.  Without the 11th

20  Amendment hurdle in the way then you just have an ADA claim,

21  and then the question becomes does the plaintiff's complaint

22  allege an ADA violation, there is no need to look at whether

23  it alleges a due-process violation under the 14th Amendment.

24  That's why it is our position that if the Court finds that

25  our complaint did require a due-process claim to survive

 1    11th Amendment immunity and did not do that that we can name
 2    individual state actors and because our claim seeks only
 3    injunctive and declaratory relief the 11th Amendment would be
 4    of no applicability to this case and we could move forward on
 5    an ordinary ADA claim and not have to look at due process,
 6    Your Honor.
 7            THE COURT:  Okay.  Thank you.  Reply?
 8            MS. GROSS:  Just briefly, Your Honor.  I think I
 9    should mention the Georgia case; I don't think it is
10    applicable in this case.  My reading of that case is that the
11    Supreme Court is saying when a plaintiff wants to bring an
12    ADA claim that is premised on a separate Constitutional
13    provision but applicable to the states through the 14th
14    Amendment's due-process clause you must prove a violation of
15    that other Constitutional provision, an actual violation in
16    order to bring it.
17            In that case I think it was an 8th Amendment, cruel
18    and unusual claim, and so the court was saying well, you are
19    going to have to actually prove the 8th Amendment violation
20    attributable to the states through the due process 14th
21    Amendment, and that's what the discussion was there.
22            In this case I don't think Georgia is relative
23    because Popovich is directly on point and is still good law,
24    and that says equal-protection-based claims are, you know,
25    barred, and this is clearly an equal-protection claim.  It is

1    not a claim where we are even getting to the due-process

2    clause because there is no allegations in the complaint that

3    implicate the due-process clause.

4         Also, just briefly, I think the Court's concerns

5    and questions about the injury in fact are on point

6    regardless of the fact that Ms. Babcock might be a licensed

7    attorney.  I honestly don't think she worked for her employer

8    in that capacity, I don't think there is anything in the

9    complaint about it, but nonetheless I still don't think

10   that's sufficient to prove injury.  I don't think I could sue

11   the U.S. Supreme Court and say well, I'm an attorney and

12   someday I might be there so do X, Y and Z.

13        THE COURT:  Well, did you get anything from the

14   complaint about -- let's say, parking or getting into the

15   building that is personal to plaintiff?

16        MS. GROSS:  I think the plaintiff -- it is hard

17   because the complaint it almost appears that it could be a

18   class action because it makes these allegations on behalf of

19   her and other similarly -- I even think it uses the term

20   similarly-situated individuals, so I can't distinguish

21   between what actually has happened to her and what she is

22   saying just the general public might encounter.  I believe

23   the parking issue is related -- is there and I can see

24   because she worked at the building that might be an issue

25   although the State of Michigan doesn't own parking, so it's

1  one of those things where there are things in the complaint

2  where she might say, you know, a ramp affects me but it is

3  difficult when you say I'm bringing this on behalf of myself

4  and all similar-situated individuals, particularly in the

5  ADA, because every handicap is different, every disability

6  may relate to a different I guess building design defect or

7  issue. For example, if I have a sight impairment, signage at

8  the building is going to be an issue, but it doesn't affect

9  me if I am a sighted individual in a wheelchair. So to just

10  say all disabled individuals have trouble accessing Cadillac

11  Place is just too broad to defend against. It needs to be,

12  you know, I have this disability, I have suffered this injury

13  because I can't access X, and that's just not in the

14  complaint in this case, so that's why we were having some

15  trouble when we responded saying it is 11th Amendment

16  immunity but it is also standing because we can't identify

17  what the issue is.

18          THE COURT: Okay. What about doing away with the

19  11th Amendment immunity by adding individuals --

20          MS. GROSS: Well --

21          THE COURT: -- in their official capacity?

22          MS. GROSS: Under the Ex parte Young doctrine, it

23  is difficult to say in a theoretical position whether or not

24  that could be done because I will say I have made many

25  challenges to 11th Amendment immunity or the Ex parte Young

 1    doctrine when I see a plaintiff who just names an individual

 2    state defendant.  For example, I am going to name the

 3    director of the Department of Corrections, I have brought

 4    challenges saying inherent in Ex parte Young is that official

 5    has some connection with the violation, that's the point of

 6    Ex parte Young, it is to strip the official of their cloak of

 7    immunity based on their bad conduct because the essence of

 8    Ex parte Young is that an officer of the state doesn't act

 9    illegally and if you are you don't get the 11th Amendment

10    immunity.

11          So I don't know in this case who you could say is

12    the relevant official for terms of her purported violations.

13    I think what I said in the brief though is I don't even think

14    we can get there because of the standing issue.  So assuming

15    she could allay the Article 3 concerns I guess I can't say

16    that the state wouldn't want to bring another motion to

17    dismiss saying the Ex parte Young official -- or the official

18    you have named for purpose of Ex parte Young is not a proper

19    defendant.

20          THE COURT:  If Ex parte Young even applies in this?

21          MS. GROSS:  If Ex parte Young applies, yes.  So I

22    guess I probably didn't address that in my brief and it was

23    probably because I said you are not going to get there

24    because you will not be able to cure the standing defect by

25    just naming an official.

1          THE COURT:  Okay.

2          MS. GROSS:  Thank you, Your Honor.

3          THE COURT:  The Court -- I think they are very

4    interesting issues here and it seems like the building has

5    certain defects that needs -- may need, I don't want to

6    prejudge this, may need to be fixed, but I don't know that we

7    have the right plaintiff to fix those defects, so anyway the

8    Court is going to issue an opinion on this.  Thank you very

9    much.

10          MS. GROSS:  Thank you, Your Honor.

11          MR. CHARARA:  Thank you, Your Honor.

12          (Proceedings concluded at 3:42 p.m.)

13                        —     —     —

14

15

16

17

18

19

20

21

22

23

24

25

1    *CERTIFICATION*

2

3            I, Robert L. Smith, Official Court Reporter of

4    the United States District Court, Eastern District of

5    Michigan, appointed pursuant to the provisions of Title 28,

6    United States Code, Section 753, do hereby certify that the

7    foregoing pages comprise a full, true and correct transcript

8    taken in the matter of JILL BABCOCK vs. STATE OF MICHIGAN and

9    MICHIGAN STRATEGIC FUND, Case No. 12-13010, on Wednesday,

10   March 19, 2014.

11

12

13                          *s/Robert L. Smith*
                            Robert L. Smith, RPR, CSR 5098
14                          Federal Official Court Reporter
                            United States District Court
15                          Eastern District of Michigan

16

17

18   Date:  08/14/2014

19   Detroit, Michigan

20

21

22

23

24

25